CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
June 05, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **JORDAN ERISMAN,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 7:24-cv-00875 |
| **AXIS INSURANCE COMPANY,** | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The issue before the court is whether Virginia Code § 38.2-312 applies to mandatory arbitration provisions in insurance contracts. The plaintiff, Jordan Erisman, is an insured under a Blanket Accident Insurance Policy ("the policy") issued by the defendant, AXIS Insurance Company ("Axis"). After suffering a catastrophic injury that rendered him a paraplegic, Mr. Erisman filed this action against Axis seeking over $1 million dollars in benefits under the policy. Now pending before the court is Axis's Motion to Stay in Favor of Arbitration pursuant to 9 U.S.C. § 3 and a mandatory arbitration clause in the policy. Def.'s Mot. to Stay, ECF No. 8. Mr. Erisman filed a response in opposition, arguing that mandatory arbitration clauses in insurance contracts are void under Virginia Code § 38.2-312. Pl.'s Resp. in Opp., ECF No. 10. Axis filed a reply, ECF No. 11. The court held a hearing on the matter on April 25, 2025, and ordered the parties to file supplemental briefing. ECF Nos. 18, 20. The parties have filed their supplemental briefs, ECF Nos. 32, 32, and this matter is ripe for disposition. For the foregoing reasons, Axis's Motion to Stay is **DENIED**.

## BACKGROUND

Mr. Erisman is a former volunteer member of the Town of Blacksburg Volunteer Rescue Squad ("BVRS"), specifically, the Blacksburg Cave Rescue Group. Compl. ¶¶ 6, 37, ECF No. 1. On June 20, 2022, Mr. Erisman went on a caving training trip to Windy Mouth Cave in West Virginia. *Id.* ¶¶ 35–36. Windy Mouth Cave is within the coverage zone of BVRS; "therefore it is crucial for BVRS caving volunteers to be familiar with the cave in the event they are called in for a rescue." *Id.* ¶ 37. While searching for alternative entrances to the cave and practicing his caving skills, loose ground gave way underneath him, and Mr. Erisman fell approximately 100 feet. *Id.* ¶¶ 35, 41. He survived the fall but suffered serious injuries, including a fractured spine at T-11, rendering him a paraplegic. *Id.* ¶¶ 43–46.

At the time of Mr. Erisman's injury, the Town of Blacksburg Fire/Rescue, through Chesterfield Insurers Fire & Rescue Insurance Agency ("Chesterfield Insurers"), obtained a Blanket Accident Insurance Policy issued by Axis.[1] *Id.* ¶¶ 9–11. The policy covers all volunteer members of BVRS, including Mr. Erisman.[2] *Id.* ¶ 11. On July 15, 2022, Mr. Erisman submitted a claim for worker's compensation benefits. *Id.* ¶ 49. Chesterfield Insurers informed Mr. Erisman that it would not submit a claim on his behalf because Mr. Erisman was "on a hike with friends" when the injury occurred, not participating in covered training. *Id.* ¶¶ 52–54. On September 15, 2022, BVRS Chief English stated that BVRS also would not submit a claim for Mr. Erisman's injury because it, too, contested that Mr. Erisman's injury occurred during covered training hours. *Id.* ¶ 56, 63.

Mr. Erisman non-suited his worker's compensation claim on October 6, 2022. *Id.*

---

[1] The Town of Blacksburg Fire/Rescue used Chesterfield Insurers to purchase the policy from Axis. Compl. ¶ 10, ECF No. 1.
[2] At argument, Axis conceded that Mr. Erisman is an insured under the policy.

2

¶ 58. On February 10, 2023, while maintaining that BVRS opposed his claim, Chief English permitted Mr. Erisman to submit his own claim directly to Axis's Third-Party Administrator, Provident. *Id.* ¶ 13, 63. Mr. Erisman submitted his claim on July 7, 2023. *Id.* ¶ 64. Provident responded that it could not open a claim until an authorized member of BVRS signed the claim form. *Id.* ¶¶ 64–66. On August 20, 2023, Chief English signed the claim form. *Id.* ¶ 73. He checked a box stating that Mr. Erisman was a member of BVRS at the time of the injury, but because BVRS still disputed that Mr. Erisman's injury took place during covered training, he checked a box stating that Mr. Erisman was not engaged in an authorized activity at the time of his injury. *Id.* BVRS also sent an email to Provident stating its position that Mr. Erisman was not on the job when the injury occurred. *Id.* ¶ 74.

Provident denied Mr. Erisman's claim based on Chief English and BVRS's representations that Mr. Erisman was not on the job when his injury occurred. *Id.* ¶¶ 75–78. Mr. Erisman appealed the denial of his claim and provided evidence that he *was* on the job when his injury occurred. *Id.* ¶¶ 80–92. Provident did not consider this evidence and denied his appeal because Chief English checked "no" on the original claim form, denying Mr. Erisman was injured while engaged in an authorized activity. *Id.* ¶¶ 94–98.

On December 16, 2024, Mr. Erisman filed this lawsuit against Axis, alleging one count of breach of contract for denying his claim without conducting a reasonable investigation into whether his accident was covered under the policy, violating its duty of good faith and fair dealing. *Id.* ¶¶ 99–113. Mr. Erisman seeks approximately $1 million dollars in benefits under the policy. *Id.* at 21–22.

On March 4, 2025, Axis filed a Motion to Stay the proceedings pursuant to an arbitration clause in the policy and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3.

3

Def.'s Mot. to Stay at 1. The arbitration clause, in relevant part, states:

> Any contest to a claim denial under this Policy will be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. . . . This provision does not apply if the Insured Person or the person claiming to be the beneficiary is a resident of a state where the law does not allow binding arbitration in an insurance policy, but only if this Policy is subject to its laws. In such a case, binding arbitration does not apply. This provision bars the institution of any individual or class action lawsuit brought by the Insured Person, his or her legal representatives, or beneficiary.

*Id.* at 2. Mr. Erisman opposes the motion and argues that the arbitration clause is void under Virginia Code § 38.2-312, which states:

> No insurance contract delivered or issued for delivery in this Commonwealth and covering subjects which are located or residing in this Commonwealth, or which are performed in this Commonwealth shall contain any condition, stipulation or agreement . . . [d]epriving the courts of this Commonwealth of jurisdiction in actions against the insurer. Any such condition, stipulation or agreement shall be void, but such voiding shall not affect the validity of the remainder of the contract.

Va. Code Ann. § 38.2-312 (emphasis added).

## LEGAL STANDARD

The Federal Arbitration Act "governs the rights and responsibilities of the parties with respect to an arbitration agreement." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "The FAA manifests an emphatic federal policy in favor of arbitral dispute resolution . . . and requires that courts rigorously enforce agreements to arbitrate." *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 712 (4th Cir. 2015) (internal citations and quotations omitted).

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The final clause of Section 2 permits arbitration

4

agreements to be declared unenforceable according to "generally applicable contract defenses." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). State law governs the enforceability of arbitration agreements. *See Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 726, 30 (4th Cir. 2025). Virginia law, which applies here, favors arbitration and the validity of arbitration agreements. *See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 122–23 (2002); *see also* Va. Code Ann. §§ 8.01-581.01 to -581.016. Like section 2 of the FAA, the Virginia Uniform Arbitration Act ("VUAA") presumes the validity of arbitration agreements "except upon such grounds as exist at law or in equity for the revocation of any contract." Va. Code Ann. § 8.01-581.01.

Section 3 of the FAA is a procedural device to enforce an arbitration agreement, permitting a party to move to stay litigation in favor of arbitration if the lawsuit involves an issue that is referable to arbitration. *See* 9 U.S.C. § 3; *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The court *must* grant the stay if it finds that (1) the issue involved in the lawsuit is "referable to arbitration," and (2) the "applicant for the stay is not in default in proceeding with such arbitration." *Dillon*, 787 F.3d at 713. But "before referring a dispute to an arbitrator, the court determines whether a *valid* arbitration agreement exists." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) (emphasis added) (citing 9 U.S.C. § 2).

While the FAA generally preempts state laws limiting arbitration, the McCarran-Ferguson Act authorizes "reverse-preemption" of federal law in favor of state law "regulating the business of insurance." 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance"); *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 453–54 (4th Cir. 2017)

5

(the "McCarran-Ferguson Act endows states with plenary authority over the regulation of insurance"). Accordingly, the FAA can be reverse preempted by state laws regulating the enforceability of arbitration agreements in insurance contracts. *See, e.g.*, *State, Dept. of Transp. v. James River Ins. Co.*, 176 Wash.2d 390, 399 (2013) (holding Washington statute voiding arbitration agreements in insurance contracts reverse preempted FAA).

## ANALYSIS

**I.　Virginia Code § 38.2-312 voids mandatory arbitration provisions in insurance contracts.**

The primary question before the court is whether Virginia Code § 38.2-312 (the "Jurisdiction Statute") voids arbitration clauses in insurance contracts. The Jurisdiction Statute voids provisions in insurance contracts that "deprive the courts of Virginia of jurisdiction in actions against an insurer." (paraphrased). Mr. Erisman argues that this language encompasses mandatory arbitration clauses because arbitrations take disputes out of court, thereby depriving courts of their original jurisdiction to hear the merits of a dispute. Pl.'s Supp. Brief at 1–7. Axis argues that the Jurisdiction Statute refers to forum selection clauses, not arbitration clauses, because courts are not technically deprived of jurisdiction when a case is referred to arbitration, as they maintain a supervisory role over the case while it is in arbitration. Def.'s Reply 2–3, ECF No. 11.

No Virginia court has interpreted this statute in either regard, so this court must apply state law to predict how the Supreme Court of Virginia would rule. *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021). When construing a statute, Virginia courts endeavor to "ascertain and give effect to legislative intent, as expressed by the language used in the statute." *Cuccinelli v. Rector, Visitors of Univ. of Va.*, 283 Va. 420, 425 (2012) (internal quotations omitted). "When the language of a statute is unambiguous, [the

6

courts] are bound by the plain meaning of that language . . . unless a literal interpretation of the language would result in a manifest absurdity." *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011). If the statute is ambiguous, the courts must apply an interpretation that comports with the legislative intent and harmonizes with other provisions of the Virginia Code. *See Blake v. Commonwealth*, 288 Va. 375, 383 (2014). Both parties argue that the Jurisdiction Statute is unambiguous, and that its plain meaning supports their respective positions. Def. Reply at 2–5, ECF No. 11; Pl.'s Supp. Brief at 1–7, ECF No. 21.

Plain Meaning

The Jurisdiction Statute prohibits contractual conditions "[d]epriving the courts of this Commonwealth of jurisdiction in actions against the insurer." Va. Code Ann. § 38.2-312. The word "insurer" is defined under Title 38.2 as an "insurance company." Va. Code Ann. § 38.2-100. No other word in this phrase has a statutory definition. "An undefined term in a statute may be defined using its standard dictionary definition." *Eberhardt v. Commonwealth*, 866 S.E.2d 38, 32 (Va. Ct. App. 2021). Black's Law defines "jurisdiction" as "[a] court's power to decide a case or issue a decree." *Jurisdiction*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Action" is synonymous with "case," meaning "[a] civil or criminal judicial proceeding." *Action, Black's Law Dictionary*, BLACK'S LAW DICTIONARY (12th ed. 2024). To "decide" means "to make a final choice or judgment." *Decide*, https://www.merriam-webster.com/dictionary/decide (last visited May 21, 2025).

Applying these definitions here, the Jurisdiction Statute unambiguously applies to mandatory arbitration provisions. When a case is referred to arbitration, the arbitrator is the one who makes the "final and binding decisions resolving the dispute," not the court. *Arbitration*, BLACK'S LAW DICTIONARY (12th ed. 2024). Reading the phrase "jurisdiction

7

in actions against the insurer" as a whole, the Jurisdiction Statute prohibits contract provisions that deprive the courts of power to make a final decision in a judicial proceeding against an insurance company. Textually, mandatory arbitration provisions fit plainly within this prohibited category.

### Harmony With Other Statutes

When a statute is unambiguous, Virginia courts do not consider rules of statutory construction, legislative history, or extrinsic evidence. *See Perez v. Capital One Bank*, 258 Va. 612, 616 (1999). Notwithstanding this rule, the parties reference sources and information outside of the Jurisdiction Statute's plain text to determine its meaning, even though each argues the statute is unambiguous. The court finds that the statute is unambiguous as discussed above; however, in order to address all of the parties' arguments and conduct a fulsome analysis, the court will consider extrinsic evidence raised by the parties. Consideration of this evidence does not change the court's ultimate determination that the Jurisdiction Statute prohibits mandatory arbitration provisions in insurance contracts.

The parties dedicated a considerable number of pages briefing whether interpreting the Jurisdiction Statute as prohibiting mandatory arbitration provisions would conflict or comport with other Virginia statutes. "Virginia jurisprudence adheres to the cardinal rule of construction that a statute should be construed, where possible, with a view toward harmonizing it with other statutes." *Lisann v. Lisann*, --- S.E.2d ---, 2025 WL 1336840, at *7 (Va. 2025) (slip op.). "If apparently conflicting statutes can be harmonized and effect given to both of them, they will be so construed." *Stafford Cnty. v. D.R. Horton, Inc.*, 299 Va. 567, 575 (2021). "[S]tatutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished."

8

*Prillaman v. Commonwealth*, 199 Va. 401, 406 (1957). "However, the mere fact that statutes relate to the same subject or are part of the same general plan does not mean that they cannot also be in conflict." *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129 (1999).

Mr. Erisman argues that reading the Jurisdiction Statute to bar arbitration clauses would comport with the General Assembly's intent as expressed in Virginia Code § 38.2-2616. Axis argues that reading the Jurisdiction Statute to bar arbitration clauses would conflict with the Virginia Uniform Arbitration Act ("VUAA") and Virginia's public policy in favor of the validity of arbitration agreements. Axis also argues that it would conflict with Virginia Code § 38.2-510(A)(11) regarding unfair claims settlement practices and Virginia Code § 38.2-2206(H) regarding uninsured/underinsured motorists. The court will consider each statute in turn.

*Virginia Uniform Arbitration Act and Virginia Code § 38.2-2616*

Like the FAA, the VUAA provides a framework for enforcing arbitration agreements in Virginia. Va. Code Ann. §§ 8.01-581.01 to -581.016. The VUAA provides that courts continue to have jurisdiction, in some capacity, over claims subject to arbitration. For example, the court can order parties to proceed with arbitration (§ 8.01-581.02(A)), appoint arbitrators (§ 8.01-581.03), enforce subpoenas (§ 8.01-581.06), confirm, vacate, modify, or correct arbitral awards (§ 8.01-581.09 to -581.011), and award costs (§ 8.01-581.012), among other things. Axis argues that the type of "jurisdiction" contemplated by the VUAA should be imputed to the Jurisdiction Statute, and because arbitrations do not literally "deprive Virginia courts of jurisdiction" under the VUAA, the Jurisdiction Statute does not apply to mandatory arbitration provisions.

The court finds that Axis's argument is not without merit. "It is a common canon of statutory construction that when the legislature uses the same term in separate

9

statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." *Barson v. Commonwealth*, 284 Va. 67, 74 (2012). Under this canon, the word "jurisdiction" would carry a consistent meaning between the VUAA and the Jurisdiction Statute.

However, this cannon is not rigid and may yield when legislative history reveals a contrary purpose. *See Eberhardt v. Fairfax Cnty. Emps.' Ret. Sys. Bd. of Trs.*, 283 Va. 190, 195–97 (2012). In *Eberhardt*, the Supreme Court of Virginia endeavored to ascertain the meaning of the word "board" in Virginia Code § 51.1-823 to determine whether it meant the board of *any* retirement system, or the board of a *police officers'* retirement system. *See id.* at 195. The Court looked to the legislative history of Virginia Code § 51.1-821, a statute within the same subdivision as § 51.1-823, and discovered that the word had been defined in a report written by the Virginia Code Commission which was used as a basis for the Act from which the code sections originated. *See id.* at 196–97. The report "resolve[d] any ambiguity about the word 'board'" as referring only to the board of a police officers' retirement system.

Here, the plain language and legislative history of Virginia Code § 38.2-2616 provides guidance for how the word "jurisdiction" should be defined in the Jurisdiction Statute, Virginia Code § 38.2-312. Section 38.2-2616 is within the same Title of the Virginia Code as the Jurisdiction Statute. Both statutes involve insurance, but § 38.2-2616 deals specifically with home protection insurance policies (the "Home Protection Statute"). It reads:

> "*Notwithstanding the provisions of § 38.2-312*, no home protection company based in this Commonwealth shall be prohibited from including in its contract a provision that requires . . . binding arbitration."

10

Va. Code Ann. § 38.2-2616 (emphasis added). Here, the General Assembly acknowledged in plain language that the Jurisdiction Statute, Section 38.2-312, prohibits binding arbitration provisions in insurance contracts. The General Assembly legislated *notwithstanding* that provision, to explicitly permit binding arbitration agreements in home protection insurance contracts.

The legislative history confirms this interpretation. Originally, the Home Protection Statute was introduced as an amendment to the Jurisdiction Statute. *See* HB 2544, 2003 Gen. Assemb., Reg. Sess. (Va. Jan. 8, 2003) (Introduced). The original bill shows that the legislature considered adding the language of the Home Protection Statute at the end of subsection 2 of the Jurisdiction Statute so that it would prohibit conditions "[d]epriving the courts of this Commonwealth of jurisdiction in actions against the insurer; *except that no home protection company . . . shall be prohibited from including . . . binding arbitration*" provisions in their insurance policies. *Id.* (italics in original). Thus, it can be inferred that the legislature that enacted the Home Protection Statute interpreted the Jurisdiction Statute as prohibiting mandatory arbitration provisions and intended to specifically carve out an exception for home protection companies.

The Fiscal Impact Statement for HB 2544 clarifies that the proposed amendment to the Jurisdiction Statute would not apply to home protection companies not domiciled in Virginia, so those companies "would not be allowed to require the contract holder to submit to binding arbitration." State Corp. Comm'n, 2003 Fiscal Impact Statement, HB2544, 2003 Gen. Assemb., Reg. Sess. (Va. Jan. 20, 2003). HB 2544 reported out of the House Committee on Commerce and Labor as an amendment in the nature of a

11

substitute, and the bill was rewritten as § 38.2-2616. *See* HB 2544, 2003 Gen. Assemb., Reg. Sess. (Va. Feb. 27, 2003) (Substitute).

This legislative history is the clearest evidence that the legislature intended the Jurisdiction Statute to encompass binding arbitration provisions, and it is the most recent expression of the General Assembly's intent on the matter. "[W]hen a later act of the legislature is clear and unambiguous in its terms and deals fully and completely with the subject, if there is any repugnancy between it and an earlier statute the earlier yields to the later expression of the legislative will." *Alexandria Nat. Bank v. Thomas*, 213 Va. 620, 625 (1973). The Home Protection Statute was enacted in 2003, while the VUAA was enacted in 1986, and the substance of the Jurisdiction Statute was enacted in 1952.[3] Thus, the court will adhere to the latest expression of the legislative will, as expressed in the text and legislative history of the Home Protection Statute and interpret the Jurisdiction Statute as prohibiting mandatory arbitration provisions. Any other interpretation would render the first clause of the Home Protection Statute meaningless. *See Spratley v. Commonwealth*, 298 Va. 187, 195–96 (2019) ("We adhere to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd. Instead, we seek to read statutory language so as to give effect to every word.").

*Virginia Code Section 38.2-2206(H)*

Axis argues that interpreting the Jurisdiction Statute as prohibiting mandatory arbitration provisions would conflict with Virginia Code § 38.2-2206(H) dealing with uninsured motorist insurance coverage. Subsection H prohibits mandatory arbitration

---

[3] Section 312 was initially enacted as § 38-339, which read substantially the same as § 38.2-312, except that it said no insurance contract may contain a provision "[d]epriving the courts of this *State* of jurisdiction of actions against the insurer." Va. Code. § 38-339 (1952) (emphasis added).

12

provisions in "endorsement[s] or provisions providing the coverage required by subsection A" of the statute. Va. Code Ann. § 38.2-2206(H). As auto insurance contracts are ostensibly subject to the Jurisdiction Statute, Axis argues that Virginia Code § 38.2-2206(H) would be redundant if the Jurisdiction Statute already barred arbitration clauses. Def.'s Reply at 4–5, ECF No. 11. Mr. Erisman argues that this redundancy does not cause a conflict between the Jurisdiction Statute and § 38.2-2206(H) and both can be given full effect, as the Jurisdiction Statute states the general rule that mandatory arbitration provisions are prohibited in insurance contracts, while § 38.2-2206(H) provides an additional, explicit safeguard against mandatory arbitration in this special subset of insurance disputes (uninsured/underinsured motorist coverage). Pl.'s Supp. Brief at 8, ECF No. 21.

While courts are discouraged from interpreting statutes in a way that renders other statutory provisions redundant, the Supreme Court has noted that "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." *Pugin v. Garland*, 599 U.S. 600, 609 (2023). The legislature may intentionally repeat itself to emphasize a point or remove any doubt, known as a "belt and suspenders approach" to statutory drafting. *Shoemaker v. Funkhouser*, 299 Va. 471, 510 (2021) (Kelsey, J., dissenting). "Sometimes the better overall reading of the statute contains some redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019).

The court takes note of the redundancy between the Jurisdiction Statute and § 38.2-2206(H). However, the court is not persuaded that the redundancy calls for an alternative interpretation of the Jurisdiction Statute. Uninsured/underinsured motorist

13

coverage is subject to much litigation, so it is unsurprising the General Assembly would re-emphasize that mandatory arbitration provisions are prohibited in this subsection of insurance disputes. The court finds that a strict application of the canon against redundancy does not lead to the most natural or logical statutory interpretation of the Jurisdiction Statute, so it declines to do so.

*Virginia Code § 38.2-510(A)(11)*

Axis argues that Mr. Erisman's proposed interpretation of the Jurisdiction Statute would conflict with Virginia Code § 38.2-510, which lists certain unfair claim settlement practices. Subsection (A)(11) prohibits insurers from "[m]aking known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration." Va. Code Ann. § 38.2-510(A)(11). Axis argues that if insureds could never recover arbitration awards in the first place, then there would be no reason to specify this as an unfair claim settlement practice. Def.'s Reply at 4, ECF No. 11. This argument falls flat, because the Jurisdiction Statute does not bar *all* arbitrations between insurers and insureds. The Jurisdiction Statute specifically does not apply to home protection insurance policies (Va. Code Ann. § 38.2-2616), ocean marine insurance policies, life and accident insurance policies not delivered in Virginia, reinsurance polices, and annuities (Va. Code Ann. § 38.2-300). Parties may also voluntarily submit to arbitration. Thus, Section 38.2-510(A)(11) does not conflict with the interpretation that the Jurisdiction Statute prohibits mandatory arbitration provisions.

<u>Case Law & Secondary Sources</u>

The undersigned is not aware of any Virginia court interpreting the Jurisdiction Statute in either manner proposed by the parties; however, it has been discussed by the

14

United States District Court for the Eastern District of Virginia and the Fourth Circuit Court of Appeals. In *Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, the plaintiff-insured sued its insurer for excessive premiums charged under a worker's compensation policy, and the defendant-insurer filed a motion to compel arbitration. *See Minnieland*, No. 1:15-cv-1695, 2016 WL 7199729, at *1 (E.D. Va. Mar. 17, 2016). The issue was whether the policy was a "contract of insurance" such that the Jurisdiction Statute applied. *See id.* at *2. The issue presently before the court, whether the Jurisdiction Statute voids mandatory arbitration provisions, was not in dispute, but it was clearly assumed by the parties and by the court. *See id.* at *3 (holding if the Jurisdiction Statute applied to the policy, the arbitration provision would "be void and unenforceable as a matter of law" pursuant to § 38.2-312). The district court granted the motion to compel arbitration but left for the arbitrator to decide whether the policy was a "contract of insurance" subject to the Jurisdiction Statute. *Id.* at *4.

The Fourth Circuit remanded the case back to the district court to determine whether the policy was a "contract of insurance." *See Minnieland*, 867 F.3d 449, 459 (4th Cir. 2017). On remand, the district court orally ruled that the policy was a contract of insurance and denied the motion to compel arbitration because the arbitration provision was void pursuant to § 38.2-312. *See Minnieland*, 913 F.3d 409, 414 (4th Cir. 2019). On appeal, the Fourth Circuit affirmed the district court's judgement and held "[b]ecause arbitration provisions in insurance contracts are void under Virginia law, Va. Code § 38.2-312, [the defendant] must face Minnieland's claims in court." *Id.* at 423.

Axis argues the courts' discussion of the Jurisdiction Statute is non-binding dicta because "an unchallenged and untested assumption is simply not a holding that binds

15

future courts." *United States v. Norman*, 935 F.3d 232, 241 (4th Cir. 2019) Def.'s Reply at 6, ECF No. 11. While it is true that the *Minnieland* courts' interpretation of the Jurisdiction Statute was an "unchallenged assumption," the assumption was critical to the outcome of the case—the motion to compel arbitration was *denied* because the mandatory arbitration provision was *void* pursuant to the Jurisdiction Statute. Thus, this court finds that the *Minnieland* cases are entitled to greater weight than Axis suggests.

The court also notes, but does not give great weight to, the Virginia Bureau of Insurance's ("VBI") interpretation of the Jurisdiction Statute. Virginia courts "do not defer to an agency's construction of a statute" and "the agency's interpretation is afforded no weight beyond that of a typical litigant." *Nielsen Co. (US), LLC, v. Cnty. Bd. Of Arlington Cnty.*, 289 Va. 79 (2015). The VBI is tasked with administering Virginia's insurance laws. In a 2017 Administrative Letter, the VBI confirmed its position that mandatory arbitration provisions are void in Virginia insurance policies pursuant to the Jurisdiction Statute. *See* Va. Bureau of Ins., Admin. Letter 2017-03 (Sept. 15, 2017).[4] The VBI's interpretation is helpful, but not determinative of the court's ultimate interpretation of the Jurisdiction Statute.

Conclusion

The court concludes that the Jurisdiction Statute, Virginia Code § 38.2-312, voids mandatory arbitration provisions in insurance contracts. This interpretation is supported by the plain meaning of the statute and the General Assembly's latest expression of its intent in enacting Virginia Code § 38.2-2616.

---

[4] The VBI's Administrative Letter can be found on the State Corporation Commission's website at https://www.scc.virginia.gov/regulated-industries/companies/administration-of-insurance-regulation-in-virginia/administrative-letters.

## II. Virginia Code § 38.2-312 reverse-preempts the Federal Arbitration Act.

The second question before the court is whether the Jurisdiction Statute regulates "the business of insurance" and reverse preempts the FAA through the application of the McCarren-Ferguson Act. The McCarran-Ferguson Act authorizes "reverse-preemption" of federal law in favor of state law "regulating the business of insurance." 15 U.S.C. § 1012(b) ("No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance"). The Supreme Court has interpreted this phrase as encompassing state laws "aimed at protecting or regulating this relationship [between insurer and insured], directly or indirectly." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993) (quoting *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969)). Thus, while the FFA normally preempts state laws disfavoring arbitration, it can be reverse preempted by state laws regulating the enforceability of arbitration agreements in insurance contracts. *See, e.g., State, Dept. of Transp. v. James River Ins. Co.*, 176 Wash.2d 390, 399 (2013).

For example, in *State Department of Transportation v. James River Insurance Company*, the Supreme Court of Washington considered whether a state law, RCW 48.18.200, prohibited binding arbitration agreements in insurance contracts. *See id.* at 394–400. RCW 48.18.200(1)(b) is substantially similar to Virginia's Jurisdiction Statute, prohibiting conditions in insurance contracts "depriving the courts of [Washington] of the jurisdiction of action against the insurer." The Supreme Court of Washington conducted a statutory construction analysis and held that RCW 48.18.200 prohibits mandatory arbitration provisions in insurance contracts. *See id.* at 400. The court then considered whether RCW 48.18.200 reverse-preempted the FAA through the application of the McCarran-Ferguson Act. It answered in the affirmative, holding that RCW

17

48.18.200 regulated "the business of insurance" because it directly relates to the insurer-insured relationship and is "aimed at protecting the performance of an insurance contract by ensuring the right of the policyholder to bring an action in state court to enforce the contract." *Id.* at 402.

Here, the court finds that the McCarran-Ferguson Act is applicable because the Jurisdiction Statute was enacted for the purpose of regulating the business of insurance. "[T]here is little question that Va. Code § 38.2-312, as part of Title 38.2 governing 'Insurance,' was enacted to regulate the 'business of insurance.'" *Minnieland*, No. 1:15-cv-1695, 2016 WL 7199729, at *2 (E.D. Va. Mar. 17, 2016). Similar to the statute at issue in *James River*, the Jurisdiction Statute directly regulates the relationship between the insured and insured by regulating the kinds of conditions that can and cannot be included in insurance policies and protecting the insured's right to file a lawsuit to enforce the policy. *See James River*, 176 Wash.2d at 402. Therefore, the Jurisdiction Statute, Virginia Code § 38.2-312, reverse preempts the FAA through the application of the McCarren-Ferguson Act.

## CONCLUSION

In conclusion, the court finds that Virginia Code § 38.2-312 voids arbitration provisions in insurance contracts. The court also finds that Virginia Code § 38.2-312 regulates the "business of insurance," and reverse-preempts the Federal Arbitration Act through the application of the McCarren-Ferguson Act. Thus, Axis's Motion to Stay in Favor of Arbitration, ECF No. 8, is **DENIED**.

It is so **ORDERED**.

Entered: June 5, 2025

Honorable C. Kailani Memmer
United States Magistrate Judge